Andrew T. Ryan (SBN
The Ryan Law Group
317 Rosecrans Ave.
Manhattan Beach, CA 90266
Tel: 310-299-9550
Email: andrew.ryan@theryanlawgroup.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SARA OCHOA and KIMBERLY BROWN, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZEROO GRAVITY GAMES LLC, a Delaware corporation,<br><br>Defendant. | CASE NO. 2:22-cv-05896-GHW-AS<br><br>Assigned to Judge George H. Wu<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE**<br><br>Date:          May 30, 2024<br>Time:          8:30 a.m.<br>Courtroom:  9D<br>Judge:         Hon. George H. Wu<br><br>Action Filed: May 5, 2022 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION…………………………..…………………..…...1

II.     BACKGROUND……………………….…...…………………….…5

    A.     This Lawsuit……………………………………………….....5

    B.     Discovery……………………………………………….....6

    C.     Settlement Negotiations………………………………………7

III.    THE TERMS OF THE SETTLEMENT………………….…………...7

    A.     The Settlement Class……………………………………...7

    B.     Settlement Consideration ………………..………………….....7

        1.  Monetary Benefits to the Class……..……………………7

        2.  Injunctive Relief to Benefits to the Class…..……………….……8

        3.  Attorneys' Fees, Costs, Incentive Awards, and Administration Costs. ………………………………………………10

        4.  Release and Dismissal of Class Claims…………...………..11

    C.     Notice and Settlement Administration Program. …………….…..11

IV.     LEGAL STANDARD………………………………………….……...12

V.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL……………………………………………….……..13

    A.     The Proposed Settlement is Fair and Reasonable……………….13

        1.  The class is adequately represented by Plaintiffs and counsel…………………………………………………...13

        2.  The proposal was negotiated at arms length……………..…….15

        3.  The relief for the class is adequate under Rule 23(e)(2)(c)……..16

            a.  The costs, risks, and delay of trial and appeal……………16

            b.  The claims process and distribution of relief are effective………………………………………………18

            c.  The attorneys' fees request is reasonable………………….19
               i.     Class counsel's fee request is not disproportionate………………………………….21
               ii.    The clear sailing provision is not collusive……....26

        4.  The Proposal Treats Class Members Equally………………..27

B.    Provisional Certification of the Settlement Class Should be Granted…………………………………………...………...28

   1.  The Proposed Class Satisfies the Prerequisites of Rule 23(a)……………………………………………........28

   2.  The Proposed Class Satisfies Rule 23 Predominance and Superiority …………………………………..……31

   3.  Injunctive Relief Class Prerequisites under rule 23 are satisfied. ………………………………...…………...35

C.    The Notice Plan Should Be Approved………………………………36

VI.  CONCLUSION……………………………………………….……38

## <u>TABLE OF AUTHORITIES</u>

*Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952 (9th Cir. 2013)………..…………29

*Ahmed v. HSBC BANK USA*, No. ED CV 15-2057 FMO (SPx),
2019 WL 13027266, (C.D. Cal. Dec. 30, 2019)…………………………..……28

*Bias v. Wells Fargo & Co.*, 312 F.R.D. 528 (N.D. Cal. 2015)……..………...35

*Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)……..……….…………19

*Chowning v. Kohl's Dep't Stores, Inc.*, No. CV 15-08673 RGK (SPx), 2016 WL
1072129 (C.D. Cal. Mar. 15, 2016)………………..………………………..17

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)………..…….12

*Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S.Ct. 1426 (2013)………..……34

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015)………...…………29, 33

*Donovan v. RRL Corp.*, 26 Cal. 4th 261 (2001)………………………………34

*Elkies v. Johnson & Johnson Servs., Inc.*, No. CV 17-7320-GW(JEMX),
2020 WL 10055593 (C.D. Cal. June 22, 2020)…………..………..…………19

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)……..…………30

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012)………...31

*Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628 (9th Cir. 2020)………...22

*Graves v. United Industries Corp.*, No. 2:17-cv-06983-CAS-SKx,
2020 WL 953210 (C.D. Cal. Feb. 24, 2020)…………………………..………17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)………..………*passim*

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983
(N.D. Cal. Dec. 18, 2018)…..……………………………………………..27

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020
WL 520616 (S.D. Cal. Jan. 31, 2020)…………………………………………27

*In re EasySaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018) ………………25, 26

*In re Facebook Biometric Information Privacy Litig.*, 522 F. Supp. 3d 617 (N.D.
Cal. Feb. 26, 2021)……………………………………………………......19

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013)…………….....…25

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019)………..13. 36

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801
(N.D. Cal. Mar. 18, 2013)………………………………………………………23

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)……..25, 28

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)……..…………………………………33

*Konik v. Cable*, No. CV 07-763 SVW (RZX), 2009 WL 10681970
(C.D. Cal., Dec. 2, 2009)……..…………………………………………………..……33

*Lambert v. Nutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017)…..…………34, 35

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013)…………………………34

*Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB, 2021
WL 1839989 (S.D. Cal. May 7, 2021)……………………………………..………..24

*Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL 758094
(N.D. Cal. Feb. 20, 2015)…………..…………………………………………………..23

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018
(S.D. Cal. 2017)……..…………………………………………………..……………13

*People v. Superior Court (J.C. Penney Corp.)*, 34 Cal. App. 5th 376 (2019)…….33

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015)…..29, 34

*Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d 1127, 1130 (S.D. Cal. 2018)……...25

*Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC), 2012 WL 5392159
(S.D. Cal. 2012)………………………………………………………………………..27

*Spann v. J.C. Penney Corp.*, 2015 WL 1526559 (C.D. Cal. Mar. 23, 2015)…17. 34

*Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244 (C.D. Cal. 2016)……………26

*Taylor v. Meadowbrook Meat Co., Inc.*, No. 3:15-cv-00132-LB,
2016 WL 4916955 (N.D. Cal. Sept. 15, 2016)……...………………………………22

*Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125 (9th Cir. 2016)…………..………31

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010)………......27

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)…………………35

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 21 338 (2011)…………………………..29

*Warner Const. Corp. v. City of Los Angeles*, 2 Cal.3d 285 (1970)……………..…29

*Williams v. Gerber Prods. Co.*, 552 F.3d 28  934 (9th Cir. 2008)………..……...29

Fed. R. Civ. P. 23………………………………………………………………*passim*

## I.     INTRODUCTION

On February 16, 2024, Plaintiffs Sara Ochoa and Kimberly Brown, on behalf of themselves and all others similarly situated ("Plaintiffs") and Defendant Zeroo Gravity Games LLC ("Defendant" or "ZGG") entered into a Class Action Settlement Agreement and Release of Claims (the "Settlement"). Ryan Decl.,[1] Ex. 1. Plaintiffs now move for preliminary approval of the Settlement.

Defendant develops and publishes mobile games, including Cash Tornado Slots - Casino, Jackpot Master Slots-Casino and Jackpot Friends Slots Casino (collectively, "Zeroo Gravity Mobile Games"), throughout the world, including the United States.

Plaintiffs' allegations, which Defendant denies, are as follows: The Zeroo Gravity Mobile Games allow users to play virtual slot machines through mobile devices using virtual coins. Players can either win or lose virtual coins in the Zeroo Gravity Mobile Games' slot machine games. The slot machines in the Zeroo Gravity Mobile Games are games of chance. Players receive free virtual coins upon beginning to play the Zeroo Gravity Mobile Games and then have opportunities to receive additional free virtual coins periodically, based on in-game events or by viewing advertisements. Players can also purchase virtual coins and other virtual items in the Zeroo Gravity Mobile Games. This litigation arises out of the advertising practices in the Zeroo Gravity Mobile Games that Plaintiffs allege are misleading and certain mechanics of the Zeroo Gravity Mobile Games' slot machines that Plaintiffs allege render the Zeroo Gravity Mobile Games to be illegal forms of gambling.

Plaintiffs contend that during the class period, Defendant advertised sales for virtual coins in the Zeroo Gravity Mobile Games deceptively. For example, the Zeroo Gravity Mobile Games presented sale offers with deceptive original prices.

---

[1] Declaration of Andrew Ryan in Support of Preliminary Approval of Class Action Settlement, Provisional Certification of Settlement Class and Approval of Procedure and Form of Notice ("Ryan Decl."), filed concurrently herewith.

The deceptive original prices provided a fictitious reference price for an offered quantity of coins. Plaintiffs allege the reference prices are deceptive, because Defendant rarely sells the offered coin quantities at the purported original price. Instead, the Zeroo Gravity Mobile Games almost always offer coins at the advertised sale price. Players of the Zeroo Gravity Mobile Games are thus deceived into a false belief that they are receiving a significantly lower price for the coins, when in reality, they are receiving no such bargain. As a result, Defendant has misled customers by falsely inflating the perceived value of their virtual coins and falsely inflating the perceived value of the Zeroo Gravity Mobile Games' sale offers, thereby inducing class members to buy items they would have never bought, or pay more than they otherwise would have paid, had they known the truth about Defendant's sale practices.

Plaintiffs make specific allegations regarding "Super Sale Offers" in the Zeroo Gravity Mobile Games. Plaintiffs contend that these Super Sale Offers use false reference prices. Further, the Super Sale Offers include countdown timers. Plaintiffs allege that these countdown timers misleadingly communicate that the Super Sale Offers are of a limited duration and availability, where in reality, Super Sale Offers are presented daily and are effectively always available.

Plaintiffs also contend that the Zeroo Gravity Mobile Games violate California's gambling laws, including California's law prohibiting slot machines. Plaintiffs allege that in the absence of purchasing virtual coins in the Zeroo Gravity Mobile Games, players are unable to continue playing the slot machine games in the Zeroo Gravity Mobile Games for significant periods of time. Accordingly, the virtual coins wagered and lost in the Zeroo Gravity Mobile Games' slot machine games are things of value and extend players' ability to continue playing the slot machines in the Zeroo Gravity Mobile Games.

Defendant makes no admissions of fact or law and deny liability as to all of Plaintiffs' claims and allegations.

Plaintiffs are pleased to present a Settlement that provides excellent relief for the classes U.S. purchasers of virtual coins from the Zeroo Gravity Mobile Games (hereafter, the "Class Members" or the "Class"). The Settlement provides that (a) each Class Member who purchased a Super Sale Offer during the class period will automatically receive in-game credits equivalent to two (2) times the dollar amount of the Super Sale purchases with an estimated class value of $2.71 million, and (b) each Class Member who made a purchase in one or more of the Zeroo Gravity Mobile Games, but did not purchase a Super Sale Offer during the class period, will automatically receive in-game credits in the amount of $2.99 with an estimated class value of at least $1 million. The in-game credits are usable in the Zeroo Gravity Mobile Games for any purchase (and will be an amount sufficient to make at least one in-game purchase without spending additional money), have no expiration dates, blackout dates or fees.

As of March 7, 2024, the Class consisted of approximately 1.2 million individuals. Ryan Decl., Ex. 2. The monetary value of the Settlement based on the In-Game Credits to be distributed under the Settlement amounts to more than $4 Million through that date. *Id*.; Settlement at §VI; Tregillis Decl., ¶¶20-30.

One of the most important features of the Settlement is that, unlike other settlements where receipt of the benefits depends on Class Members submitting a timely claim (usually resulting in less than 10% of the class benefiting), in this Settlement, all Class Members who do not affirmatively opt out will automatically receive the In-Game Credits within the Zeroo Gravity Mobile Games. Because the credits never expire, the benefits of the credits will forever remain with Class Members until they use them. There is no possibility of reversion to Defendant.

Importantly, the Settlement also provides impactful injunctive relief to prevent future harm to consumers. With respect to Plaintiffs' false advertising claims, Defendant has implemented a practice of not using "strikethrough" style price comparisons in the Zeroo Gravity Mobile Games, including in the game

stores and pop-up ads. Further, Defendant is required to include a disclosure in connection with its Super Sale Offers similar to the following: "Virtual coin price discount refers to the virtual coin price currently available in the store. The virtual coin price in the store is dynamic and may vary over time and for different users." Settlement at ¶7.

With respect to Plaintiffs' illegal gambling claims, Defendant is required to (1) implement "free virtual coins" mechanics in the Zeroo Gravity Mobile Games in which each user who has run out of virtual coins or otherwise has a coin balance low enough to be unable to make another spin will be given an amount of virtual coins sufficient to make another spin within the slot game the user is playing, (2) the "free virtual coins" mechanics will apply to all slot-style games within the Zeroo Gravity Mobile Games, (3) the "free virtual coins" mechanics will continue to be offered each time a user runs out of coins or otherwise has a coin balance low enough to be unable to make another spin, and (4) ZGG will provide a link to gambling self-help resources and establish and implement a self-exclusion policy that is consistent with other comparable games in the industry. Settlement at ¶6. These critical changes are not temporary; they must be maintained forever. While the value of such measures is difficult to calculate, they are directed to addressing sales practices and the most addictive mechanics of the Zeroo Gravity Mobile Games, representing a potential consumer impact of over $30 million. Tregillis Decl., ¶¶31-50.

Class Counsels' proposed attorneys' fees and costs are a small fraction (18.5%) of the Settlement's monetary and an even smaller fraction of non-monetary value – far less than the 25% benchmark – with no reversion to Defendant. The proposed $7,500 incentive award to Ms. Ochoa and $5,000 incentive award to Ms. Brown are within the norm.

In view of the risks of proceeding with this litigation through class certification, summary judgment, trial, and appeal, this is an excellent result for the

Class. Plaintiffs therefore respectfully request the Court to enter an order granting preliminary approval of the Settlement, provisionally certifying the Settlement Class, directing notice of the Settlement in the manner proposed herein, and setting a schedule for final approval.

## II.    BACKGROUND

### A. This Lawsuit

On May 5, 2022, Ochoa filed the original complaint (Dkt. 2-1) against Defendant in Case No. 22-ST-CV-14939 in the Superior Court for the State of California. The original complaint brought claims directed to Defendant's false advertising practices. Ochoa filed the First Amended Complaint (Dkt. 2-2) in the same action on behalf of herself and similarly-situated individuals on July 18, 2022 and served the First Amended Complaint and Summons on Defendant July 22, 2022. On August 19, 2022, Defendant filed a Notice of Removal of the action to the District Court for the Central District of California, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§1332, 1441, 1453 under the caption *Sara Ochoa v. Zeroo Gravity Games LLC*, Case No. 2:22-cv-05896-GW-ASx (Dkt. 1). On October 13, 2022, Ochoa filed the Second Amended Complaint (Dkt. 18) against ZGG and AppLovin Corp. ("AC").

On November 21, 2022, ZGG filed a motion for sanctions against Ochoa, asserting that Second Amended Complaint violated Rule 11 of the Federal Rules of Civil Procedure. ZGG's motion for sanctions was denied on February 2, 2023. ZGG and AC also filed motions to dismiss on November 21, 2023. On February 2, 2023, the Court granted the motions to dismiss with leave to amend.

Plaintiffs filed a Third Amended Complaint on February 17, 2023. The Third Amended Complaint added claims alleging that the Zeroo Gravity Mobile Games violated California's gambling laws. On March 16, 2023, ZGG and AC filed a motion to dismiss the Third Amended Complaint. On May 25, 2023, the Court granted in part and denied in part the motion to dismiss with leave to amend.

The Court denied ZGG's motion to dismiss with respect to Ochoa's false advertising claims. The Court granted ZGG's motion to dismiss Brown's claims with leave to amend. The Court dismissed, with prejudice, Ochoa's claims seeking monetary relief on the basis that the Zeroo Gravity Mobile Games violated California gambling law, but allowed those claims for injunctive relief to proceed.

On June 6, 2023, Plaintiffs filed a Fourth Amended Complaint, which no longer named AC as a defendant. Plaintiffs assert claims for violations of (1) the California Unfair Competition Law, Cal Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), (2) the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), (3) the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), (4) Arkansas Deceptive Trade Practices Act, as well as (5) fraud, (6) negligent misrepresentation, and (6) unjust enrichment. ZGG filed a motion to dismiss the Fourth Amended Complaint on July 6, 2023, which Plaintiffs opposed on July 17, 2023.

**B. Discovery**

On May 25, 2023, Ochoa served her First Set of Requests for Production and First Set of Interrogatories. Ryan Decl., Exs. 3, 4. On June 6, 2023, Ochoa served her second set of Interrogatories and Requests for Production. Ryan Decl, Exs. 5, 6. On July 28, 2023, Ochoa served deposition notices for the managers of ZGG. Ryan Decl., Exs. 7, 8. On August 8, 2023, Ochoa served her First Set of Requests for Admission and Third Set of Requests for Production. Ryan Decl., Exs 9, 10.

On July 28, 2023, counsel for ZGG took the full-day deposition of Ms. Ochoa. Ryan Decl., Ex. 11, ¶39. On August 4, 2023, following multiple conferences of counsel, Plaintiff Ochoa served a joint stipulation pursuant to Civil Local Rule 37 for a motion to compel discovery against ZGG. Ryan Decl., Ex. 12. On August 11, 2023, the parties stipulated to stay the litigation to pursue mediation.

C. <u>**Settlement Negotiations**</u>

The parties held a full-day mediation with Hon. Margaret M. Morrow (Ret.) of Judicate West on October 10, 2023. Although the case did not settle that day, the parties narrowed the issues in dispute substantially. Specifically, the parties reached an agreement during mediation regarding the changes to the Zeroo Gravity Mobile Games' advertising practices and the game mechanics surrounding when a user runs out of coins, the availability of free-to-play options and the accessibility of gambling addiction resources. The parties did not discuss or negotiate Plaintiffs' counsel's request for attorneys' fees and costs during the October 10 mediation.

The parties then participated in a second mediation with Judge Morrow on November 14, 2023. During that mediation session, the parties reached agreement on compensation for class members. Only after all other material terms were agreed upon did the parties negotiate Plaintiffs' counsel's attorneys' fees.

The parties then engaged in direct discussions to finalize a long form settlement agreement. The parties engaged in several rounds of revisions and the parties executed the Settlement on February 16, 2024.

**III.   THE TERMS OF THE SETTLEMENT**

A.   <u>**The Settlement Class**</u>

The Settlement defines the classes whose claims are being resolved as follows: "all individuals located within the United States who during the Class Period, made purchases in the Zeroo Gravity Mobile Games, and who are not otherwise subject to the exclusions." The Class Period is defined as from January 1, 2019 through the preliminary approval date. ZGG's first game launched after January 1, 2019.

B.   <u>**Settlement Consideration**</u>

1.  **Monetary Benefits to the Class**

Under the Settlement, "for each account where the user purchased a Super Sale Offer during the Class Period, Zeroo Gravity will distribute In-Game Credits

7

in an amount equivalent to two (2) times the dollar amount of the Super Sale Offer purchase for that account." Settlement at 16. This amounts to approximately $2.71 million of in-game credits to those users. Further, "for each account where the user made at least one purchase but did not purchase a Super Sale Offer during the Class Period, Zeroo Gravity will distribute In-Game Credits in amounts of $2.99 (which will be an amount sufficient to make at least one in-game purchase)." *Id.* This amounts to an additional approximately $1 million of In-Game Credits to users. Accordingly, the total monetary benefit to the class is over $4 million. Tregillis Decl., ¶29.

The In-Game Credits are non-transferable credits that will automatically be deposited to each game account. Settlement at §VI. The In-Game Credits are usable to make purchases within the Zeroo Gravity Mobile Games. The In-Game Credits do not have an expiration date and cannot be cancelled. The In-Game Credits will not revert to ZGG. The In-Game Credits granted under the Settlement will have the same value and usability as money in the each Zeroo Gravity Mobile Game with no additional restrictions or use and no fees associated with the use or non-use of such credits. Each Settlement Class Member who or which does not elect to opt out shall automatically receive the In-Game Credits on the schedule set forth in the Settlement following preliminary approval, with no requirement for a claim to be submitted. *Id.*

### 2. Injunctive Relief Benefits to the Class

The Settlement provides for significant injunctive relief whereby Defendant has implemented or will implement the following changes to the Zeroo Gravity Mobile Games:

- ZGG has implemented "free virtual coins" mechanics in the Zeroo Gravity Mobile Games in which each user who has run out of virtual coins or otherwise has a coin balance low enough to be unable to

make another spin will be given an amount of virtual coins sufficient to make another spin within the slot game the user is playing.

- The "free virtual coins" mechanics will apply to all slot-style games within the Zeroo Gravity Mobile Games.
- The "free virtual coins" mechanics will continue to be offered each time a user runs out of coins or otherwise has a coin balance low enough to be unable to make another spin.
- ZGG will provide a link to gambling self-help resources and establish and implement a self-exclusion policy that is consistent with other comparable games in the industry.
- Zeroo Gravity has implemented a practice of not using "strikethrough" style price comparisons in the Zeroo Gravity Mobile Games, including in the game stores and pop-up ads (e.g. Super Sale Offers).
- Super Sale Offers within the Zeroo Gravity Mobile Games will include a pricing disclosure substantially similar to the following: "Virtual coin price discount refers to the virtual coin price currently available in the store. The virtual coin price in the store is dynamic and may vary over time and for different users." A similar disclosure will be included in ZGG's terms of service.
- ZGG will change the wording of the "1st Purchase Double Bonus" offers in the Zeroo Gravity Mobile Games to state "lst In-Game Store Purchase Double Bonus" offer, or make a substantially similar change to clarify the nature of the bonus.
- ZGG confirms that the "surge" dial mechanics in the game stores in the Zeroo Gravity Mobile Games will continue not to function after the exercise of a "1st Purchase Double Bonus" offer, or make a substantially similar change to clarify the function of the "surge" dial.

1    There is no end date to these changes to the Zeroo Gravity Mobile Games.

2    Settlement at §V.

3              **3.   Attorneys' Fees, Costs, Incentive Awards, and Administration**

4                   **Costs**

5              As noted, the Settlement provides a direct monetary value to Class Members

6    totaling over $4 million. Injunctive relief, which includes eliminating the false and

7    misleading advertising alleged in Plaintiffs' complaints and providing Class

8    Members with free access to the games within the Zeroo Gravity Mobile Games

9    (thereby eliminating their need to spend money to continue playing games in the

10   Zeroo Gravity Mobile Games) has a potential value of over $34 million. Tregillis

11   Decl., ¶40.

12             In consideration of obtaining these significant benefits for the Class, the

13   many hours spent by Class Counsel, the significant funds Class Counsel has spent

14   on litigation costs, including experts, in litigating this case, and the risks taken by

15   Class Counsel, the Settlement provides that Class Counsel may seek an award of

16   attorneys' fees and costs up to $750,000 with no opposition from Defendant.

17   Settlement at 20. Class Counsel estimates that their total litigation costs through

18   final approval will be approximately $75,000. Ryan Decl., ¶40. Therefore, Class

19   Counsel's fee request amounts to approximately 17% of the over $4 Million

20   monetary value recovered for the Class, not considering the value of the injunctive

21   relief. *See id.* If the value of the injunctive relief is considered, Class Counsel's

22   request for fees is 2% of the overall value provided to the Class. *See id.* Counsel

23   have spent considerable time and money working on the action and will provide an

24   exact accounting of time and costs for the Court's consideration at final approval.

25   The Settlement further provides that each of the two class representatives (Ms.

26   Ochoa and Ms. Brown) may seek an incentive award not to exceed $7,500 and

27   $5,000, respectively, with no opposition from Defendant. Settlement at ¶16.

28

### 4. Release and Dismissal of Class Claims

Defendant denies liability. Settlement at §X. Thus, in exchange for the above-described benefits of the Settlement, the individual Plaintiffs and all Class Members who do not opt out agree to a standard release against Defendant and other affiliated entities. *Id*. at §VIII. However, because the Class Members include non-California residents who may have monetary claims related to the Zeroo Gravity Mobile Games' alleged violations of gambling laws, the Released Claims for Class Members only includes a release as to injunctive relief arising from claims that the Zeroo Gravity Mobile Games are illegal gambling. *Id*.

### C.   <u>Notice and Settlement Administration Program</u>

Angeion Group, LLC will be the settlement administrator. Ryan Decl., ¶41. The notice program is to give the best notice practicable. Indeed, the custom notice program is reasonably calculated under the circumstances to apprise Class Members of the Settlement (via multiple mechanisms), how they can automatically receive and use their In-Game Credits, and their right to opt out or object. Weisbrot Declaration[2] at ¶¶20-43. The administrator will also verify the distribution of the In-Game credits to all Class Members who do not opt out. Settlement at §IV. The notice program consists of (i) direct notice to each Class Member via in-game communications, (ii) direct notice via email (where available); and (iii) and media notice via a programmatic display advertising campaign, social media advertising, and search engine marketing.  Weisbrot Declaration at ¶¶ 20-42.  The administrator will also maintain a telephone-support system and website that includes the detailed notice, Settlement, Fourth Amended Complaint, papers in support of preliminary and final approval of the Settlement and other related orders and documents. *Id*. ¶¶ 44-46.

---

[2] Declaration of Steven Weisbrot of Angeion Group, LLC Re: Proposed Notice Plan, filed concurrently herewith.

The notices will communicate to Class Members the deadline for objections or to opt out. Settlement at §IV. Instructions for submitting objections and opting out are described in detail in the detailed notice on the settlement website, which all Class Members via all forms of notice will be made aware of. *Id.*

## IV.    LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Before a district court grants approval, it must determine that the settlement would be "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Congress amended Rule 23, which took effect on December 1, 2018. These amendments provide guidance on the "fair, adequate, and reasonable" standard at the preliminary approval stage. *See* Fed. R. Civ. P. 23(e)(2). The amended Rule 23 clarifies that courts must employ a two-step process in granting preliminary approval. Under the first step, the parties must show "that the court will likely be able to (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). These factors are:

(A)    the class representatives and counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief; (iii) the terms of any proposed award of attorney's fees and costs; and (iv) any agreement required to be identified;

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The second step of the analysis requires a "showing that the court will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). Where, as here, the proponents of the proposed

settlement seek certification of a settlement class seeking monetary remedies, they must demonstrate that they meet the prerequisites of Rule 23(a), as well as the requirements of Rule 23(b)(3). *See Hanlon*, 150 F.3d at 1019-1022.

Rule 23(a) requires the putative class to meet four threshold requirements: numerosity, commonality, typicality, and adequacy of representation. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). But whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558-60 (9th Cir. 2019) (an individual question that "would only apply to a subset of the class and would primarily implicate trial management issues is not considered when conducting a predominance analysis for a settlement class.").

## V.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A. The Proposed Settlement is Fair and Reasonable

As noted above, under the first step of the Court's analysis of whether preliminary approval of a class settlement should be granted, the parties must show "that the court will likely be able to (i) approve the proposal under [the final approval factors set forth in] Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). These factors are considered below, in turn.

#### 1. The Class Is Adequately Represented by Plaintiffs and Counsel

The first fairness factor under Rule 23(e)(2) is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "To determine legal adequacy, the Court must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Nunez v. BAE Sys.*

13

*San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1033 (S.D. Cal. 2017) (citations omitted). The analysis is also "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB, 2021 WL 1839989, at *7 (S.D. Cal. May 7, 2021).

Here, there is no conflict between Class Members and the class representatives and counsel. Further, the class representatives and counsel have more than adequately represented the class.

The class representatives have cooperated in the pre-suit investigation, prosecution and settlement of this action by producing documents, being interviewed, being deposed (Ms. Ochoa) and providing a detailed letter to the mediator explaining their experience with the Zeroo Gravity Mobile Games and the harm they have suffered. The class representatives have also been involved and kept up to date on all aspects of the case, including evaluation of the settlement terms. (Ryan Decl., ¶42; Ochoa Decl.,[3] ¶¶8-15; Brown Decl.,[4] ¶¶10-16.

Further, Class Counsel has vigorously prosecuted this case on behalf of the Class. Class Counsel investigated the Zeroo Gravity Mobile Games and the legality of their advertising and slot machine games under the laws of various states for over a year. This has required Class Counsel to, among other things, investigate the validity of claims arising from Defendant's practices on three different Zeroo Gravity Mobile Games and across multiple platforms and user accounts over the course of several months to verify that presentation of sale advertisements in the Zeroo Gravity Mobile Games across different users and platforms. Class Counsel also had to investigate the Zeroo Gravity Mobile Games' presentation (or lack thereof) of Defendant's Terms of Service across platforms

---

[3] Declaration of Sara Ochoa in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of Settlement Class, and Approval of Procedure for and Form of Notice, filed concurrently herewith.

[4] Declaration of Kimberly Brown in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of Settlement Class, and Approval of Procedure for and Form of Notice, filed concurrently herewith.

and for different users. Class Counsel also had to expend significant time and resources finding class representatives. Ryan Decl., ¶¶10-14.

Further, Class Counsel defeated ZGG's multiple challenges to the pleadings and claims that Defendant would have raised in this Action. Class Counsel also engaged in significant discovery with Defendant both before and after mediation to obtain complete and accurate information regarding Class Members and the Zeroo Gravity Mobile Games' financial data. Further, Counsel's efforts also included lengthy settlement negotiations in two mediations session and through dozens of direct communications with counsel to achieve this Settlement. Ryan Decl., ¶¶15-19, 22-28.

Finally, Class Counsel has extensive experience in complex litigation spanning 20 years, including numerous trials, a clerkship, complex litigation experience at large firms, including trials, and class action litigation experience. Ryan Decl., ¶¶4-21. In sum, the class representatives and counsel have more than adequately represented the class.

**2.  The Proposal Was Negotiated at Arm's Length**

The second Rule 23(e)(2) factor looks at whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This is "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes.

The settlement here was the product of extensive and painstaking arm's length negotiations. The parties enlisted the assistance of Judge Margaret Morrow, a highly respected retired federal district judge. The parties initially participated in a full day mediation session with Judge Morrow and a second half-day mediation

session with Judge Morrow. After agreeing to a general framework for prospective measures that Defendant could undertake to address the allegations raised in the action, the parties engaged in direct and frequent dialogue where they negotiated intensely all the detailed and intricate aspects of the settlement, provision by provision. Only after reaching an agreement on the material terms of the settlement covering benefits for the class and changes to the Zeroo Gravity Mobile Games did the parties negotiate the provisions in the Settlement regarding class counsel's fees and class representative fees. Ryan Decl., ¶¶22-28. The parties have satisfied the second Rule 23(e)(2) factor.

Further, the Settlement excludes from the release monetary claims based on allegations that the Zeroo Gravity Mobile Games are illegal gambling, thereby preserving the rights of Class Members to pursue those monetary claims. Settlement at §VIII. This further demonstrates that the negotiations here were done at arm's-length and were not a collusive effort to benefit either party at the expense of the class.

**3.  The Relief for the Class is Adequate Under Rule 23(e)(2)(c)**

Under the third Rule 23(e)(2) factor, the Court must consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Comm. Notes. As shown below, the Settlement satisfies these factors.

      a.  <u>The costs, risks, and delay of trial and appeal</u>

A "central concern" when evaluating a proposed class action settlement "relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R.

Civ. P. 23(e), 2018 Advisory Comm. Notes; *see also Graves v. United Industries Corp.*, No. 2:17-cv-06983-CAS-SKx, 2020 WL 953210, at *7 (C.D. Cal. Feb. 24, 2020). Here, the risk, expense, complexity, and likely duration of further litigation all weigh in favor of approving the proposed Settlement. Plaintiffs are confident they would be able to obtain class certification and successfully prove their claims at trial. They are also confident that they have formulated a viable damages model based on well-settled and accepted economic methodologies. *See Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *3-8 (C.D. Cal. Mar. 23, 2015). However, juries are unpredictable and may not find Defendant's pricing and sales practices deceptive despite the evidence. There is also a small risk that Plaintiffs' model for computing class-wide damages would not be acceptable to the Court or the Ninth Circuit. *See, e.g., Chowning v. Kohl's Dep't Stores, Inc.*, No. CV 15-08673 RGK (SPx), 2016 WL 1072129, at *12 (C.D. Cal. Mar. 15, 2016) (granting summary judgment based on Plaintiffs' failure to demonstrate "a viable measure of restitution, such as a 'price premium' model in which an expert isolates the amount of the price attributable to the false representation.").

Moreover, Plaintiffs would face years of litigation against experienced defense counsel. Without a settlement, this case would force Plaintiffs to conduct further class discovery, successfully prosecute a motion for class certification and potentially oppose a Rule 23(f) petition to the Ninth Circuit, conduct merits discovery, successfully oppose summary judgment, undertake expert discovery, make pretrial disclosures and filings, and try the case. And, even if Plaintiffs prevail at trial, they may have to oppose a lengthy appeal. In contrast, a settlement ensures Class Members promptly receive the significant benefits negotiated for them and that the Zeroo Gravity Mobile Games are promptly changed to eliminate their misleading advertisement and most addictive game mechanics.

Further, the expert and case-related costs alone in this type of class action, which are already expected to be approximately $50,000, would likely fall between

$500,000 to $1,000,000 based on Class Counsel's experience. Ryan Decl., ¶20. Plaintiffs have obtained a significant benefit for all Class Members in the form of in-game credits that may be used in the Zeroo Gravity Mobile Games. These In-Game Credits may be used by Class Members without a fee and without expiration. Under the Settlement, the guaranteed, immediate, and automatic monetary benefit to the Class is at least $4 Million. In contrast, the Class would have to pursue a risky damages claim for their purchase and use of virtual items in the Zeroo Gravity Mobile Games after engaging in a lengthy discovery, motions, trial, and appeals process. *See* Tregillis Decl. ¶¶13-19, 34-36.

Moreover, by virtue of Plaintiffs' lawsuits, Defendant has agreed to change their business practices. They will stop using strikethrough-style quantities that are the subject of the false advertising claims and will provide robust changes to the game mechanics of the Zeroo Gravity Mobile Games to address the illegal gambling claims. This injunctive relief is directed to the heart of the issues raised in this Action and addresses excess consumer spending in the Zeroo Gravity Mobile Games values at over $30 million. Tregillis Decl., ¶¶31-50. In sum, this first Rule 23(e)(2)(C) factor weighs heavily in favor of preliminary approval.

      b.  <u>The Claims Process and Distribution of Relief Are Effective</u>

The Court must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C) and 2018 Advisory Comm. Notes. Additionally, "the court should be alert to whether the claims process is unduly demanding." *Id.* Here, Class Members face no obstacles to receiving the benefits of the Settlement because those who do not opt out will *automatically* (without the need to file a claim) receive their In-Game Credits with no fees, restrictions or expiration date. Because Defendant is a mobile games publisher, all its customers had to create accounts in the Zeroo Gravity Mobile Games. The In-Game Credits may thus be distributed to all Class Members within the Zeroo Gravity Mobile

Games, eliminating the need for a claims process and guaranteeing that each Class Member will receive their credits in the relevant account - the Zeroo Gravity Mobile Games themselves in which the Class Members made purchases. Thus, this is far better than a traditional settlement where only a small fraction of class members benefit due to dependence on locating and reaching class members and requiring them to submit a claim with detailed information regarding their purchases. *See In re Facebook Biometric Information Privacy Litig.*, 522 F. Supp. 3d 617, 622 (N.D. Cal. Feb. 26, 2021) (claims rate of "4-9% [] is typical for consumer class actions"). Moreover, the credits give Class Members a variety of uses within the Zeroo Gravity Mobile Games, including purchasing virtual coins that do not require Class Members to incur any out-of-pocket cost.

c.  The Attorneys' Fees Request Is Reasonable

The Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has interpreted the amended Rule 23(e)(2) as imposing an obligation on district courts to "examine whether the attorneys' fees arrangement shortchanges the class. In other words, the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-a-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Briseno v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)). In considering the proposed award of attorney's fees, the Court must scrutinize the settlement for any "subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." *Id*. at 1023 (quoting *Bluetooth*, 654 F.3d at 947). Thus, the Court must evaluate the settlement for three such "subtle signs" of collusion between class and defense counsel: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the

agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Id*. at 1023. Although this inquiry would normally occur at the final approval stage prior to the amendments to Rule 23(e), the rule now requires as the first step of the preliminary approval analysis to show "that the court will likely be able to (i) approve the proposal" under the final approval factors of Rule 23(e)(2), *see* Fed. R. Civ. P. 23(e)(1)(B)(i), which includes consideration of the factor under Rule 23(e)(2)(C)(iii).

Here, the proposed attorneys' fee arrangement does not "shortchange" the class in any way. The monetary value of the settlement, before adding the value of injunctive relief, is over $4 Million. This is calculated by multiplying 2 times the total Super Sale Offers purchased (2 x $1,453,559.84 = $2,907,119.68). In addition, for Class Members who did not purchase a Super Sale Offer, the value is calculated by multiplying the number of those class members (385,373) by the $2.99 of In-Game Credits ($1,152,265.27). *See* Ryan Decl., Ex. 2. Further, because these numbers are from March 2024, they are likely to increase by the time of the preliminary approval.

Class Counsels' fees will not come out of the benefits to be paid to the Class, meaning that Class Members will receive their full benefits regardless of the attorneys' fees the Court allows. Moreover, the proposed fee amount is only 17% of the total monetary settlement value before accounting for the value of injunctive relief. If injunctive relief is considered, the proposed fee amount will likely be less than 2.5% of the total settlement value. In either case, the fee request is well under the 25% "benchmark" for measuring presumptively acceptable fees in the Ninth Circuit. *Bluetooth*, 654 F.3d at 942. There is thus no concern here that Class Counsels' fees would reduce Class benefits or are otherwise unreasonable.

In addition, there is no reversion of any benefits payable under the Settlement to Defendant. Every Class Member who does not opt out will automatically receive unrestricted game credits that will never expire. There is thus

no risk of any benefit not being distributed to Class Members due to the failure to make a claim. Because there is no expiration date, there is also no risk that unredeemed game credits will be returned to Defendant. Settlement at §VI.

The proposed award of fees also does not "shortchange" the class and is properly balanced against the relief provided for the Class because, as explained above, Class Counsel have worked substantial hours, including an extensive motion practice, discovery and intensive settlement discussions. Class Counsel have also taken an enormous risk by pursuing this case on contingency and advancing substantial costs— expected to be $75,000 through settlement, if approved. *See Elkies v. Johnson & Johnson Servs., Inc.*, No. CV 17-7320-GW(JEMX), 2020 WL 10055593, at *8 (C.D. Cal. June 22, 2020) (awarding 33 percent of the common fund because performance of work "on a contingency basis (for nearly two years) is an always-risky practice, particularly in a case that had to survive the number of challenges, and incur the amount of expenses.").

There is also nothing unusual about the timing of payment of attorneys' fees. Defendant is not obligated to pay fees until after the Settlement becomes final. For these initial reasons, the proposed award of fees is properly balanced vis-à-vis the relief provided to the Class. There is no concern about disproportionality between the proposed fee award and benefits to be paid to the class because, the fee does not affect the Class benefits and there are no subtle signs of collusion under *Bluetooth*.

i. *Class Counsel's Fee Request Is Not Disproportionate*

The Settlement satisfies the first *Bluetooth* factor because Class Counsel will not be receiving a "disproportionate distribution of the settlement," *Bluetooth*, 654 F.3d at 947, as demonstrated by four points.

First, the attorneys' fees and costs are not coming out of the monetary benefits that will be distributed to the Class and, thus, do not at all reduce the benefits to the Class.

Second, the fee request is less than 18% of the Settlement's monetary value alone, when the accepted benchmark in the Ninth Circuit taking into consideration both monetary and non-monetary relief is 25%. *See id*. at 942. Here, Class Counsel have worked hard to oppose a motion for sanctions and multiple motions to dismiss, and to negotiate a settlement whereby each Class Member in each of the three cases will *automatically* receive—without the need to file a claim— unrestricted in-game credits. As of the execution of the Settlement, Defendant estimates that there are 1.1 million members of the putative classes. (Stip. at ¶12, Ex. 1.) Calculating the value of the In-Game Credits yields a total monetary value alone of over $4 million with no reversion to Defendant. Tregillis Decl. at ¶29.

Plaintiffs' proposed attorneys' fees and costs of $750,000 is thus a reasonable figure that is not disproportionate to the over $4 million recovery for the Class. Of the requested amount, Plaintiffs estimate their costs of litigation— which include expert fees, mediation costs, and other fees and costs—to be approximately $75,000. Ryan Decl., ¶40. That leaves attorneys' fees of $675,000 Thousand, which is only 17% of the minimum monetary value of the Settlement, independently paid without any adverse effect on Class Members' benefits. This is well within the accepted benchmark award of 25% in the Ninth Circuit for attorneys' fees even for "common fund" or "constructive common fund" cases where the benefit to the class is reduced by the fee award. *Id.*

Third, when the significant injunctive relief negotiated by Class Counsel is considered, as it should be, the attorneys' fees requested amount to approximately 2.2% of total recovery, removing any concern of disproportionality, especially in light of the 25% customary benchmark in such cases. "When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers." *Taylor v. Meadowbrook Meat Co., Inc.*, No. 3:15-cv-00132-LB, 2016 WL 4916955, at *5 (N.D. Cal. Sept. 15, 2016); *see also Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 631 (9th Cir. 2020) (upholding district

court's approval of attorneys' fees where it was apparent that injunctive relief offered "generated benefits far beyond the cash settlement fund"); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (settlement value includes injunctive relief). Thus, for example, in *Miller v. Ghirardelli Chocolate Co.*, the Court included the value of Ghirardelli Chocolate removing various terms from its labels as part of the common fund from which to calculate attorneys' fees. No. 12-cv-04936-LB, 2015 WL 758094, at *1, 5 (N.D. Cal. Feb. 20, 2015). Here, the Settlement provides for significant and meaningful injunctive relief. It requires Defendant to discontinue using fictitious strikethrough-style reference prices in advertising virtual coins and to change the Zeroo Gravity Mobile Games address Plaintiffs' gambling claims.

The crux of each of Plaintiffs' false advertising claims is that Defendant's sale advertisements using reference prices or reference coin quantities is misleading because the references signal to consumers that they are receiving a bargain as compared to recent, former offers when they are not. As a result, customers were misled to believe that they were receiving a genuine discount from the ordinary and prevailing offers when that was not true. Under the Settlement, Defendant must change the way it advertises such sales in the Zeroo Gravity Mobile Games. First, Defendant can no longer use strikethrough price comparisons. Further, Defendant must include disclosures explaining the basis for any value comparisons and the dynamic pricing of virtual coins in the Zeroo Gravity Mobile Games. In short, Defendant has agreed to discontinue the sale advertising practices that were at the center of Plaintiffs' false advertising claims.

Further, the core of Plaintiffs' illegal gambling claims were based on allegations that the mechanics of the slot machines in the Zeroo Gravity Mobile Games rendered the virtual coins things of value and/or extended the ability of users to continue playing the slot machine games in the Zeroo Gravity Mobile Games. For example, in some of the Zeroo Gravity Mobile Games, when a user ran

23

out of virtual coins sufficient to continue playing the slot machine games in the Zeroo Gravity Mobile Games, the user may have to wait until the next day to receive additional free virtual coins sufficient to continue playing. In some of the Zeroo Gravity Games, a user could watch an advertisement to receive a modest quantity of virtual coins to continue playing, which materially disrupted the user's ability to play.

Under the Settlement, Defendant has implemented "free virtual coins" mechanics in the Zeroo Gravity Mobile Games that allows users who do not have enough virtual coins to continue playing the slot machines to receive enough virtual coins sufficient to make another spin. The free virtual coins mechanic will be available anytime a user's coin quantity falls below the amount needed to continue spinning the slot machine they are playing. In this way, the Settlement provides players with true free-to-play options without interruption and without requiring the purchase of additional virtual coins or watching advertisements.

Further, the Settlement provides for significant additional measures that are directed to reducing the addictive mechanics of the slot machine games in the Zeroo Gravity Mobile Games. Specifically, the Settlement requires Defendant to provide a link to gambling self-help resources and establish and implement a self-exclusion policy that is consistent with other comparable games in the industry.

There is no time limit or expiration for these changes to the Zeroo Gravity Mobile Games. The changes to the game mechanics, advertising and availability of user resources are permanent. In sum, the Settlement achieves fundamental and enduring changes to the core practices complained about in Plaintiffs' lawsuit, namely by rectifying the most addictive mechanics of the Zeroo Gravity Mobile Games and eliminating the misleading forms of advertisement.

As far as the value, according to Plaintiffs' highly experienced and qualified damages expert, the injunctive relief has a potential value of over $30 million. Tregillis Decl., ¶40. This is based on the historic U.S. sales in the Zeroo Gravity

Mobile Games since 2021, when the first of these games launched. Notably, because Defendant is required to maintain these changes perpetually, the injunctive relief negotiated in the Settlement is likely to be worth much more. Therefore, when the value of injunctive relief (over $34 million) is combined with the minimum value of monetary relief ($4 million), the proposed attorneys' fees of $700 thousand amount to less than 2% of the value provided to the Class, which is clearly not disproportionate under the current acceptable benchmark of 25%.

Fourth, the proposed fee award is also not disproportionate to the amount of the Settlement because the game credits are not "coupons" within the meaning of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1711, *et seq.* CAFA requires courts (1) to apply "heightened scrutiny" to settlements that award "coupons" to class members, and (2) to base fee awards on the redemption value of the coupons, rather than on their face value. *In re EasySaver Rewards Litig.*, 906 F.3d 747, 754–55 (9th Cir. 2018) (citing 28 U.S.C. § 1712). "Thus, delineating settlements that award cash or cash-equivalent certificates from those awarding coupons affects the calculation of attorneys' fees." *Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d 1127, 1130 (S.D. Cal. 2018) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1182–86 (9th Cir. 2013)). The determination that the class is being provided with "coupon" relief may also bear upon the overall fairness and adequacy of the settlement at preliminary approval. *See id.* at 1133; *see also In re HP Inkjet*, 716 F.3d at 1178 (CAFA "invites increased judicial scrutiny of coupon settlements generally."); 28 U.S.C. § 1712(e) ("In a proposed settlement under which class members would be awarded coupons, the court may approve the settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members.").

Congress did not define the term "coupon" when promulgating CAFA. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950 (9th Cir. 2015). However, the Ninth Circuit has since outlined three factors to guide the inquiry of whether

25

proposed class relief is a coupon: "(1) whether class members have to 'hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *Easysaver*, 906 F.3d at 755 (quoting *Online DVD*, 779 F.3d at 951). Applying this inquiry, the In-Game Credits here are clearly not "coupons."

Here, Class Members do not have to hand over more of their own money before they are able to take advantage of the In-Game Credits. There is no minimum purchase requirement. Moreover, the In-Game Credits are usable for a coins or to access a variety of games in the Zeroo Gravity Mobile Games. The In-Game Credits awarded to Class Members are not restricted in any away but are freely usable within the Zeroo Gravity Mobile Games. The In-Game Credits are entirely flexible in how a user may use them. There are no expiration dates, minimum purchase requirements or blackout dates. Settlement at §VI.

Because the credits are not "coupons," the calculation of Class Counsels' attorneys' fees should be based on the monetary value of the credits, which, at a minimum, is $4 Million without accounting for the benefits conferred on the Class from injunctive relief.

ii. *The Clear Sailing Provision Is Not Collusive*

As concerning the second *Bluetooth* factor, while the Settlement contains a "clear sailing" provision whereby Defendant agrees not to oppose Class Counsels' request for attorneys' fees and costs in an amount that does not exceed $750,000, the mere presence of such a provision does not render a settlement collusive. *See*, *e.g.*, *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1260–61 (C.D. Cal. 2016). To the contrary, several facets of the Settlement in this case demonstrate that there was no collusion whatsoever. First, as discussed above, this Settlement was negotiated at arms-length through four-plus months of direct negotiations between counsel and with the assistance of a highly respected retired district judge. Second,

the parties negotiated attorneys' fees only after the material terms of the Settlement covering benefits for the Class had been agreed upon by the parties. Ryan Decl., ¶¶22-28; *see Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC), 2012 WL 5392159, at *13 (S.D. Cal. 2012) (objection to clear sailing agreement overruled because fee amount was negotiated separately and after the class settlement was finalized). Therefore, there was no collusion under the second *Bluetooth* factor.

### 4.  The Proposal Treats Class Members Equally

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes. Thus, under this factor, courts consider whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018); *see also True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010). No such concerns exist in this case. All Class Members, no matter which of the Zeroo Gravity Mobile Games they bought from, what they bought, or whether they still have their order confirmations, will all be treated the same. Each user who purchased a Super Sale Offer will receive two times their Super Sale purchases in In-Game Credits, and users who did not make Super Sale Offers but made other purchases in the Zeroo Gravity Mobile Games will each receive $2.99 of In-Game Credits. *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020) (factor met at preliminary approval because "the settlement treats each class member equally" where each class member could make the same claim). This equal treatment makes sense because all Class Members were

uniformly exposed to the same deceptive discounting practice during the respective class period.

That the Settlement provides for the class representatives to each receive a $7,500 and $5,000 incentive award does not improperly grant them preferential treatment. Rather, it is an appropriate amount to compensate them for their time and dedication to the case, and the total payment for the two class representatives of $12,500 constitutes a miniscule fraction of the total minimum monetary value of the Settlement. *See Online DVD*, 779 F.3d at 947-48 (upholding $5,000 incentive awards that were 417 times larger than $12 gift cards because the awards were only 0.17% of the total $27 Million settlement fund); *Ahmed v. HSBC BANK USA*, No. ED CV 15-2057 FMO (SPx), 2019 WL 13027266, at *7 (C.D. Cal. Dec. 30, 2019) ($5,000 incentive award "presumptively reasonable"). Here, Ms. Ochoa sat for a full day deposition that required preparation and time away from her job. Ryan Decl., ¶38; Ochoa Decl., ¶12.

Finally, the Settlement excludes from the release claims for monetary relief for illegal gambling. Settlement at §VIII. Therefore, Class Members who have monetary claims for illegal gambling under are free to pursue those claims. This Court ruled that under California law, plaintiffs could not seek monetary relief for illegal gambling claims. The Settlement accordingly recognizes that the state law of the named plaintiffs here may not adequately represent the entirety of the Class Members and appropriately limits the scope of the release.

## B. <u>Provisional Certification of the Settlement Class Should Be Granted</u>

### 1. The Proposed Class Satisfies the Prerequisites of Rule 23(a)

**Numerosity.** Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable . . ." Here, this requirement is easily met because there are in excess of 1 million class members. Ryan Decl., Ex. 2.

**Commonality.** Rule 23(a)(2) requires that the case present "questions of law or fact common to the class." The putative class must show that their claims

"depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 21 338, 350 (2011). Commonality has been "construed permissively," and its requirements deemed "minimal." *Hanlon*, 150 F.3d at 1019-20. It does not "mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (internal quotations omitted).

For their claims under the UCL, FAL, and CLRA, Plaintiffs need only "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 28  934, 938 (9th Cir. 2008) (internal quotations omitted). "This inquiry does not require individualized proof of deception reliance and injury." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) (internal quotations omitted). Similarly, Plaintiffs' California consumer protection claims based on the *omission* of material information are also actionable. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *see also Warner Const. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 294 (1970) (summarizing the three situations under California law where there is a duty to disclose in the absence of fiduciary or confidential relations).

Similarly, Arkansas Deceptive Trade Practices Act broadly prohibits the use of any deception, fraud, false pretenses or promises, concealment, suppression, or omission of any fact that is material to a business dealing or transaction. Ark. Code Ann. §4-88-107.

Within this legal framework, Plaintiffs' claims share numerous overarching questions of law or fact. The key common questions driving this litigation include whether Defendant advertised using fictitious reference prices or coin quantities and misleading countdown timers during the class periods, whether Defendant's

representations and omissions were likely to deceive, whether they were material, whether Defendant owed a duty to disclose, and whether Plaintiffs and the Class are entitled to restitution or damages. 4AC at ¶253. These questions are capable of class-wide resolution. In other words, determining the truth or falsity of one or more of these questions will resolve issues "central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. This case, therefore, satisfies commonality.

***Typicality.*** Rule 23(a)(3) requires the putative class to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To meet the typicality requirement, Plaintiffs must show that: (1) "other members have the same or similar injury"; (2) "the action is based on conduct which is not unique to the named plaintiffs"; and (3) "other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Here, Plaintiffs' and the putative class members' claims all arise from the same allegations regarding Defendant's uniform misrepresentations, game mechanics and/or failures to disclose material facts. Each of the class representatives, just like all other Class Members, purchased virtual coins during the class period, were exposed to the same deceptive advertising and sale promotions on the Zeroo Gravity Mobile Games, did not receive the truth from Defendant about the reference prices/quantities, relied on the reference prices/quantities and promotions in making their purchases, relied on the misleading countdown timers in making their purchases and were subjected to the inability to continue playing the games of chance in the Zeroo Gravity Mobile Games when they ran out of virtual coins.

***Adequacy.*** Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the class." "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs

1   and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v.*
2   *Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting
3   *Hanlon*, 150 F.3d at 1020).

4        As explained above and established by the declarations of the class
5   representatives and Class Counsel, both questions are easily satisfied.

6        **2.  The Proposed Class Satisfies Rule 23 Predominance and Superiority**

7        ***Predominance.*** As noted, Rule 23(b)(3) requires that "questions of law or
8   fact common to class members predominate over any questions affecting only
9   individual members . . ." This "inquiry asks the court to make a global
10   determination of whether common questions prevail over individualized ones."
11   *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "[A]n
12   individual question is one where members of a proposed class will need to present
13   evidence that varies from member to member, while a common question is one
14   where the same evidence will suffice for each member to make a *prima facie*
15   showing or the issue is susceptible to generalized, class-wide proof."  *Id*. "When
16   common questions present a significant aspect of a case and they can be resolved
17   for all members of the class in a single adjudication, there is clear justification for
18   handling the dispute on a representative rather than an individual basis." *Hanlon*,
19   150 F.3d at 1022. Here, common issues predominate both as to questions of
20   liability and damages.

21        <u>Common Issues Relating to Liability Predominate</u>

22        Common issues predominate over individualized inquiries as it relates to
23   Defendant's liability for Plaintiffs' claims for violation of the UCL, FAL, and
24   CLRA, Arkansas Deceptive Trade Practices Act and for common law fraud. As
25   alleged in the Fourth Amended Complaint, Plaintiffs' claims are premised on
26   whether the sale advertisements in each of the Zeroo Gravity Mobile Games at
27   issue are false or misleading. 4AC at ¶¶28-37. According to Plaintiffs, the
28   reference prices/quantities advertised on the Zeroo Gravity Mobile Games,

31

including in Super Sale Offers, are misleading and deceptive because they do not represent the prevailing or ordinary offers for virtual coins in the Zeroo Gravity Mobile Games. *Id*. Here, the misleading reference prices/quantities were displayed on the in each Application across their respective users during the class periods at issue. *Id.*

Plaintiffs' Fourth Amended Complaint provides detailed evidence in the form of observation of the Zeroo Gravity Mobile Games over time across multiple users and platforms that demonstrates the common form of false sales to which the Class was exposed on a daily basis for the class period. The Super Sale Offers Defendant typically advertised on their Zeroo Gravity Mobile Games included a stricken reference price (e.g. $99.99 or $49.99) with a sale offer (e.g. $1.99 or $0.99). Moreover, the Super Sale Offers consistently displayed a countdown timer for all users indicating that the promotion was of a limited duration, only for the countdown timer to reset when a user logged back in or reentered the game store. In short, misleading sales of purportedly limited duration were perpetually run on the Zeroo Gravity Mobile Games across the U.S. with a largely identical presentation. 4AC at ¶¶73-103, 119-140; Ochoa Decl. at ¶¶3-7; Brown Decl., ¶¶3-9.

Also important to the predominance analysis, no consumers received any disclosure telling them the truth, namely, that the advertised reference prices/quantities are not the prevailing or ordinary quantity of virtual coins sold in the Zeroo Gravity Mobile Games. Further, no disclosure was provided that the advertised specials are not truly limited in time, but are available virtually perpetually. As a result, relevant to Plaintiffs' claims based on affirmative misrepresentations, all putative class members were exposed to the same false representations. Likewise, relevant to Plaintiffs' claims on omissions of material facts, no putative class members were exposed to any disclosures explaining the

1 truth about the advertised reference quantities and promotions on the Zeroo
2 Gravity Mobile Games.

3 Further, common issues predominate, because the virtual coins in the Zeroo
4 Gravity Mobile Games are sold exclusively within the Zeroo Gravity Mobile
5 Games. Defendant sets the prices and quantities for these virtual coins. Thus, the
6 misleading reference prices/quantities had the same effect on all users of the Zeroo
7 Gravity Mobile Games, as there is no source external to the Zeroo Gravity Mobile
8 Games themselves that formed the basis for users' understanding of the value of
9 the virtual coins. *People v. Superior Court (J.C. Penney Corp.)*, 34 Cal. App. 5th
10 376, 409 (2019) ("[W]hen a retailer sells in-house goods, the retailer's *actual*
11 prices regarding those goods constitute their market prices" and hence, the
12 retailer's actual prices "provide an adequate basis for determining whether the
13 retailer's advertised former price claims comply with section 17501.") (emphasis
14 in original).

15 Finally, although each of Plaintiffs' claims require proof of reliance, it is
16 well-settled  that Plaintiffs need not demonstrate individualized  reliance on
17 specific misrepresentations. *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009).
18 Rather, "a presumption, or at least an inference, of reliance arises wherever there is
19 a showing that a misrepresentation was material." *Id.* The test for materiality is
20 whether "a reasonable man would attach importance to its existence or
21 nonexistence in determining his choice of action in the transaction in question." *Id.*
22 at 327. These principles also apply to Plaintiffs' common law and statutory claims
23 premised on omissions. *See Daniel,* 806 F.3d at 1225.

24 The findings of Plaintiffs' marketing expert also confirms that Defendant's
25 representations concerning their pricing and discounts are material to customers'
26 purchasing decisions, a concept confirmed by previous studies and literature.
27 Tregillis Decl. at ¶¶35-37. Indeed, there is no plausible argument that pricing is not
28 material to purchasing decisions. *Konik v. Cable*, No. CV 07-763 SVW (RZX),

33

2009 WL 10681970, at *18 (C.D. Cal., Dec. 2, 2009) ("Certainly an objectively reasonable man would consider the price of the cable service as a critical factor in deciding whether to become a TWC subscriber.") (citing *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 277 (2001) ("The price almost always is the most important term of the bargain.")).

### Common Issues Relating to Damages Predominate

At least where class certification is contested, the plaintiffs are merely required to show that class damages match their theory of liability. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013); *see also Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017) (explaining that *Comcast* stands "only for the proposition that 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability'" and any "[u]ncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages.") (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013). "[T]he mere fact that there might be differences in damage calculations is not sufficient to defeat class certification." *Pulaski,* 802 F.3d at 987. "Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert*, 870 F.3d at 1183 (quoting *Pulaski*, 802 F.3d at 989).

Here, the available acceptable damages models attributable to the form of advertisement Plaintiffs allege against the Zeroo Gravity Mobile Games are well-established. *See Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *3-8 (C.D. Cal. Mar. 23, 2015). Similarly, the potential impact of false comparison advertising on estimated price premium between what consumers who were exposed to the deceptive reference quantities and discount promotions would be willing to pay for

34

1  versus what they would pay if they were told the true reference price and true

2  discount have been well researched. (Tregillis Decl., ¶¶35-37.) These studies and

3  potential impact on consumer purchase decisions and price premiums are tied to

4  Plaintiffs' theory of liability. *Id.* The damages methodology for Plaintiffs' claims

5  therefore satisfies the predominance requirement under *Comcast*. *See Lambert*, 870

6  F.3d at 1184 (the question at class certification is only whether the plaintiff "has

7  presented a workable method."); *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 543

8  (N.D. Cal. 2015) ("At class certification, Plaintiffs need only show that damages

9  can be determined and attributed to their theory of liability.").

10  **Superiority.** Rule 23(b)(3) also requires "that a class action is superior to

11  other available methods for fairly and efficiently adjudicating the controversy."

12  The class action method is considered superior if "classwide litigation of common

13  issues will reduce litigation costs and promote greater efficiency." *Valentino v.*

14  *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, due to the sheer

15  number of Class Members (over 1 million) combined with the amount of damages

16  at issue for each Class Member as compared to the cost and burden of litigation, it

17  is not economically feasible to litigate this case through individual lawsuits.

18  For the foregoing reasons, Plaintiffs have satisfied the requirements of Rule

19  23(a) and (b)(3). Plaintiff's request to certify the proposed settlement classes

20  should be granted.

21  ### 3.  Injunctive Relief Class Prerequisites Under Rule 23 Are Satisfied

22  Plaintiffs also meet the requirements of Rule 23(b)(2), which permits

23  certification for injunctive relief where "the party opposing the class has acted or

24  refused to act on grounds that apply generally to the class, so that final injunctive

25  relief or corresponding declaratory relief is appropriate respecting the class as a

26  whole." Fed. R. Civ. P. 23(b)(2). "Predominance and superiority are self-evident"

27  under Rule 23(b)(2). *Dukes*, 564 U.S. at 363. Here, Plaintiffs' available remedies

28  include injunctive relief. Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code

§ 1780(a)(2). Because Defendant is required to make changes to the Zeroo Gravity Mobile Games that would be uniformly applicable to every Class Member who plays the Zeroo Gravity Mobile Games, the injunctive relief here applies "generally to the class." The Settlement thus provides meaningful injunctive relief to redress Plaintiffs' claims. Absent the Settlement, this type of relief would only be available to the Class after prevailing at trial.

### C. <u>The Notice Plan Should Be Approved.</u>

"Before the district court approves a class settlement under Rule 23(e), it is 'critical' that class members receive adequate notice." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). For notice to a class proposed to be certified for purposes of settlement under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice may be made by United States mail, electronic means, or another type of appropriate means. *Id*. "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id*.

The Settlement's notice program satisfies these requirements. The administrator is highly experienced. Weisbrot Decl. ¶¶ 1-12 (summarizing experience including administration of other "casino-gaming apps" settlements, such as *Wilson v. Huuuge, Inc.*, No. 3:18-cv-05276-RSL (W.D. Wash.), *Kater v. Churchill Downs, Inc.*, No. 2:15-cv- 00612 (W.D. Wash.) and *Thimmegowda v. Big Fish Games, Inc.*, No. 2:19-cv-00199 (W.D. Wash.). The notice program consists of (i) direct notice to each Class Member via in-game communications, (ii)

36

direct notice via email (where available)[5]; and (iii) and media notice via a programmatic display advertising campaign, social media advertising, and search engine marketing. *Id.* ¶¶ 20-42. Because each class member can be notified individually through at least one or more of these means, the CLRA notice requirements are satisfied. Cal. Civ. Code § 1781(d). To satisfy the CLRA, the settlement administrator will also provide publication notice in the California edition of the USA Today for four (4) consecutive weeks. Weisbrot Decl. ¶43.

The administrator will also create a settlement website posting a copy of the Full Notice, operative complaints for each of the Actions, Settlement, and Preliminary Approval Order. Settlement at §IV. Finally, the settlement administrator will handle dissemination of the notice to public officials required by CAFA. Weisbrot Decl., ¶ 47.

The notice procedures will accurately inform Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing, and the rights of all parties. The various notices all provide information on how Class Members can object and opt out of the Class, along with information about appearing at the final approval hearing. *Id*. Class Members are informed about how they will receive game credits—namely, that they will automatically receive them if they do not opt out. *Id.* The notice also provides the contact information of Class Counsel. *Id*. The Parties here together with the administrator have created the forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process. Settlement, Exs. A and B.

Therefore, these proposed methods of giving notice are appropriate because they provide a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the

---

[5] Defendant estimates that it has email contact information for 48% of users of Cash Tornado, 52% of users of Jackpot Master, and 44% of users of Jackpot Friends.

proposed Settlement. Thus, the notices and notice procedures amply satisfy the requirements of due process.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the [Proposed] Preliminary Approval Order lodged concurrently herewith.

Respectfully submitted,

THE RYAN LAW GROUP

Dated: April 26, 2024                     By: */s/Andrew T. Ryan*

Andrew T. Ryan, Esq.
Counsel for Plaintiffs Sara Ochoa and
Kimberly Brown